**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JAMES D. EVANS,              )
                            )
    PLAINTIFF,              )
                            )
VS.                         )          CV-00-H-2767-S
                            )
BELLSOUTH                   )
TELECOMMUNICATIONS, INC.,   )
                            )
    DEFENDANT.              )

**ENTERED**

**FEB - 4 2002**

## MEMORANDUM OF DECISION

The Court has before it the September 14, 2001 motion of Defendant BellSouth Telecommunications, Inc. ("BST") for summary judgment.  Pursuant to the Court's September 17, 2001 order, the motion was deemed submitted, without oral argument, on October 15, 2001.

### I. Procedural History

Plaintiff James D. Evans commenced this action on September 29, 2000 by filing a complaint in this Court stating a retaliation claim under the Age Discrimination in Employment Act ("ADEA").[1]  Plaintiff's complaint also includes a state law claim for breach of contract.  Defendant's September 14, 2001 motion for summary judgment asserts that Plaintiff, with regard to his

---

[1] Plaintiff's complaint also states that it seeks to redress a deprivation of rights under 42 U.S.C. § 1981 and 42 U.S.C. § 2000(e) [sic] but fails to state a claim for any such deprivation.

*35*

retaliation claim, has failed to show that he suffered an adverse employment action and that Defendant is therefore entitled to summary judgment. In seeking summary judgment on Plaintiff's breach of contract claim, Defendant asserts that no evidence exists to establish that any provisions of the settlement agreement were breached.

Defendant submitted evidence[2] in support of its motion for summary judgment and filed a supporting brief on September 14, 2001.  Plaintiff submitted evidence[3] in opposition to Defendant's motion for summary judgment and filed an opposing brief on October 9, 2001. Pursuant to the September 17, 2001 order, the motion is now under consideration.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir.

---

[2] In addition to the depositions of Harry Michael Schell, extracts from the deposition of Plaintiff and the April 5, 1999 settlement agreement and release, Defendant submitted the affidavits of Harry Michael Schell and Dean Cox.

[3] In addition to the deposition of Harry Michael Schell, Plaintiff submitted his own affidavit.

2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. See Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. See Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2

F.3d at 1115-17 (citing <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428 (11th Cir. 1991)(<u>en banc</u>)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact, i.e. facts that would entitle it to a directed verdict if not controverted at trial. <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden

4

at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

Plaintiff Evans is a former employee of BST whose employment with the company terminated on or about June 28, 1996. See Dep. of James Evans at 45, 46. Plaintiff disputed the conditions of his termination from BST and filed suit to vindicate his rights. See Evans v. BellSouth Telecommunications, Inc., Civil Action No. 97-CV-AR-2576-S (1997 N.D. Ala.). That dispute, consisting of claims under the ADEA, the Family Medical Leave Act and the Employee Retirement Income Security Act, was settled on or about

April 5, 1999 with the parties entering into a settlement agreement. See the April 5, 1999 settlement agreement which is Exhibit 7 of the Plaintiff's deposition abstract found in Def.'s Mem. of Law in Supp. of Def.'s Mot. for Summ. J.

Subsequent to his termination at BST, Plaintiff worked with a variety of companies pursuant to contracts with those companies which had been obtained for him by one or more placement companies. During this period, Evans was contacted by BST employee Mike Schell concerning possible temporary contract employment on a BST project. See Evans Dep. 102-111. Plaintiff indicated an interest, sensing that the project could serve as a catalyst for his returning to BST as a regular full-time employee, but Plaintiff clearly understood that the contract employment would only be temporary, and that suited Plaintiff because he did not want to place his current position in jeopardy. See Evans Dep. 106-110. Plaintiff expressly told Schell not to expect him to do the work between 8:00 a.m. and 5:00 p.m., as he would do the work between 6:00 p.m. and midnight. See Evans Dep. 108-109. When Schell approached Dean Cox, another BST employee, about a possible contract arrangement with Evans, she told Schell that she had no jobs or money and that contracting with Evans was not an option. See Schell Dep. 21-22. A few days later, Schell left Plaintiff a voice mail indicating that the job opportunity would not be available. See Schell Dep. 10-14. During

6

the message, Schell made reference to "some conflicts or problems" associated with Plaintiff's previous employment at BST. See Schell Dep. 12. Schell was aware that when Plaintiff left his employment with BST in 1996 there was a lawsuit but had no recollection how he became aware of this. See Schell Dep. 22-23.

On September 29, 2000, Plaintiff filed a complaint containing claims for retaliation and breach of contract. See Compl. ¶¶ 4-8. Plaintiff claims BST failed to hire him for temporary contract employment in retaliation for the previous lawsuit he had filed against the company. Id. Plaintiff additionally claims that BST breached the confidentiality aspects of the settlement agreement associated with Evans' initial lawsuit against BST. See Compl. ¶ 5.

### IV. Applicable Substantive Law and Analysis

Evans claims that BST retaliated against him in violation of the ADEA and breached a settlement agreement in connection with an earlier lawsuit under the ADEA. Defendant's motion for summary judgment asserts that no genuine issue of material fact exists and that defendant is entitled to summary judgment as a matter of law: (1) on the retaliation claim because Plaintiff has not shown that he suffered an adverse employment action; and (2) on the state law breach of contract claim because Plaintiff has not shown the existence of a contractual obligation which was breached. See Def.'s Mot. Summ. J.

7

## A.   Retaliation

Plaintiff asserts a claim for retaliation under the ADEA.
Plaintiff claims that his filing of the initial ADEA lawsuit
against BST in 1997 led to BST's retaliatory failure to hire him
for temporary contract employment in 2000.

Generally, to establish a prima facie case of retaliation,
a plaintiff must show: (1) that he engaged in a statutorily
protected activity of which the employer was aware; (2) that he
suffered an adverse employment action as a result of that
activity; and (3) that there was a causal connection between his
protected activity and the adverse employment action. See Gupta
v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000);
Griffin v. GTE Fla., Inc., 182 F.3d 1279, 1281 (11th Cir. 1999).
A failure to hire can constitute an adverse employment action.
See Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir.
2000) (citations omitted). However, in order to establish a prima
facie case of discrimination in failing to hire, a plaintiff must
show: (1) he was a member of the protected group; (2) he applied
and was qualified for an available job; (3) he was rejected
despite his qualifications; and (4) the position remained open
and the employer continued to seek applicants with similar
qualifications. See McDonnell Douglas Corp. v. Green, 411 U.S.
792, 802 (1973); Chapman v. Transport, 229 F.3d 1012 (11th Cir.
2000) (reaffirming the McDonnell Douglas framework in examining

8

discrimination in ADEA cases).

Here, Plaintiff has not generated a factual dispute on an essential element of his prima facie retaliation charge: an adverse employment action. Specifically, plaintiff has not shown and cannot show, the availability of an actual employment position. Without the existence of such a position, no adverse employment action is present. Plaintiff testified that the discussions with Schell concerning the possibility of contract work with BST were exploratory in nature, designed only to gauge Plaintiff's interest and availability, and at best were related to the possibility of short term, after hours, special contract work which would not interfere with Plaintiff's regular work. Plaintiff was not offered the contract work and has failed to come forward with evidence that anyone else was offered such work or that BST continued to explore with others the possibility of such contract work. The absence of such an available position is fatal to Plaintiff's attempt to establish the requisite adverse employment action based upon an alleged failure to hire.

Perhaps more importantly, Plaintiff testified that he understood that any work for BST would be on a contract basis. Plaintiff hoped that the job "could potentially . . . allow [him] to regain [his] employment status with [BST]." However, the ADEA does not provide relief for discrimination against an independent contractor. See Daughtrey v. Honeywell, Inc., 3 F.3d 1488, 1495

n. 14 (11th Cir. 1993). In addition to the direct concession by Plaintiff, his testimony regarding his inability to leave his current employment and the need to do any BST work after hours further bolsters Plaintiff's concession as to contractor status.[4]

In short, Plaintiff cannot meet the threshold requirements necessary to establish a prima facie case of retaliation under the ADEA. Thus, the Court finds that no material issues of fact exist and that Defendant BST is entitled to summary judgment as to the retaliation claim asserted by Plaintiff.

### B.   Breach of Contract

Plaintiff also asserts a claim for breach of contract. Plaintiff claims that statements made to him during a voice mail indicate that BST improperly divulged confidential information protected by a settlement agreement that arose from Plaintiff's 1997 lawsuit against BST. Plaintiff cites two paragraphs of the confidentiality agreement that Defendant allegedly violated.[5]

------

[4] Since Plaintiff essentially concedes his independent contractor status, the court deems it unnecessary to consider the common law factors used to determine such status. See Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 323-24 (1992).

[5] The only arguably pertinent parts of those paragraphs read as follows:

¶ 3: "BellSouth also agrees that, if it is contacted by non-BellSouth prospective employers of Mr. Evans, BellSouth will only verify information that is submitted by such employers for verification regarding Mr. Evans's home address, dates of employment with BellSouth, current status (i.e., inactive), last job title held, and that he was a full time management employee."

In order to establish a breach of contract claim under Alabama law, a plaintiff must show: (1) the existence of a valid contract binding the parties in the action; (2) plaintiff's own performance under the contract; (3) defendant's nonperformance; and (4) damages. <u>See</u> <u>State Farm Fire and Casualty Co. v. Slade</u>, 747 So.2d 293, 303 (Ala. 1999). Because the gravamen of the claim in dispute concerns BST's alleged nonperformance, the Court will examine whether Plaintiff presented sufficient evidence of a lack of performance of a contractual obligation on the part of BST.

Here, as in his retaliation claim, Plaintiff cannot create a factual dispute on an essential element of his claim for breach of contract by the defendant. Paragraph five of the settlement agreement placed an obligation on Plaintiff and his attorney but no obligation on BST. Further, Plaintiff testified that the only evidence he has of a breach of confidentiality is the voice mail left by Schell. That message fails to indicate whether Schell was made privy to any confidential matters. In fact, Plaintiff's evidentiary submission included Schell's testimony that Dean Cox never informed him of any confidential material. Regardless, as

---

¶ 5: "The nature and terms of this Release are strictly confidential and will not be disclosed <u>by Mr. Evans or his</u> <u>attorneys</u>, except as follows: (a) in any legal proceeding based upon the provisions and terms thereof, (b for proper documentation in regard to tax or similar records, or (c) pursuant to a court order. BellSouth reserves the right to disclose the terms of the Release to those employees and officers of the Company that have a need to know with respect to this information." (emphasis added)

Paragraph five of the settlement agreement clearly indicates, Cox was authorized to discuss such matters with BST employees who "need[ed] to know". Consideration of creating a contract position would certainly seem to fall within the realm of such a category. Paragraph three simply has no relevance to the facts in this case. Plaintiff has come forward with no evidence that BST was contacted by a "non-BellSouth" prospective employer or gave such a prospective employer any information. Absent any evidence of a breach of a contract provision by BST, Plaintiff is unable to establish a claim for breach of contract.

In summary, the Court finds that no material issues of fact remain and that Defendant BST is entitled to judgment as a matter of law as to all claims asserted by Plaintiff.  A separate order will be entered.

DONE this ___4^th___ day of February, 2002.


_____
SENIOR UNITED STATES DISTRICT JUDGE